*Copy —
please
Stamp
+
Return,
thanks*

RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAR 3 0 2011

JAMES N. HATTEN, Clerk
By. Brandueral

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF GEORGIA

### ATLANTA DIVISION

Carol Cole

          Plaintiff

vs

          **1:11-CV-1016**

          **-ODE**

State of Georgia

Bank of America

BP

          Defendants

          Title 28 Section 1331
          Title 18 Section 1344
          Title 18 Section 1343
          Title 18 Section 1341
          Title 18 Section 1964 c

<u>Claim</u>:

Alleged intent to cause grave harm for providing evidence of bank fraud and fraudulent banking documents to federal authorities.

<u>Statute</u>:

SOX 1107 Section 1513e

1

RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAR 3 0 2011

JAMES N. HATTEN, Clerk
BY: _____ Deputy Clerk

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF GEORGIA

### ATLANTA DIVISION

---

Carol Cole

        Plaintiff

vs

State of Georgia

Bank of America

BP

        Defendants

Title 28 Section 1331
Title 18 Section 1344
Title 18 Section 1343
Title 18 Section 1341
Title 18 Section 1964 c

Claim:

Alleged intent to cause grave harm for providing evidence of bank fraud and fraudulent banking documents to federal authorities.

Statute:

SOX 1107 Section 1513e

**Brief:**

1. In January 2001 – John Bleakley told me that if I ever left him again that I would end up homeless and starving. I left.
2. On January 27, 2001 – President Georgia W. Bush announced a faith-based initiative.
3. I allege for leaving John Bleakley that I was subjected to his false statements without my knowledge and with the alleged intent to have me suffer grave economic harm via the denial of employment and the denial of my inheritance via insurance fraud, probate fraud and bank fraud (Beck v Prupis).
4. I allege that John Bleakley was to be the state's *unavailable* witness in any court proceeding against me.
5. I allege that John Bleakley used both of my distant brothers, Alton and Steve Knight, in this grave endeavor against me.
6. I allege I was handed **fraudulent Bank of America banking documents** after I refused an inappropriate settlement offer regarding my inheritance.
7. I allege for providing evidence to the FBI and with my federal law suit that I was to be subjected to Steve Knight's false orchestrated testimony, a secretly filed frivolous restraining order containing false statements, and other's biased statements and biased corroborated hearsay with the alleged intent to have me wrongfully accused and wrongfully convicted in the alleged future death of Steve Knight.
8. I allege the *years* of my perseverance and a *growing* awareness opened my eyes to the alleged harm targeted against me as recently as 2011.
9. I credit the unfolding evidence; my serious doubts of others actions or lack of, my ongoing experiences/observations, intuition and the *belief in myself*.

**Injuries:** *Years of*

1. Defamation
2. Discrimination
3. Psychological Torture
4. Economic Destitution

**General Damages:**

| | | |
|---|---|---|
| State of Georgia | $2,000,000,000 | |
| Bank of America | $2,000,000,000 | 1,000,000 shares preferred stock |
| BP | $2,000,000,000 | 1,000,000 shares preferred stock |

**Evidence:**

a. November 1998 – Letter received from John Bleakley
b. November 1998 – Letter John Bleakley had placed in my personnel file containing false statements
c. March 2003 - Amended caveat to will
d. May 2003 - Court ruling
e. April 2003 – Fraudulent Bank of America banking documents (alleged faxed fraudulent request for check truncation and substitute checks)
f. May 2003 - Handwriting expert's affidavit on bank fraud
g. May 2003 – Excerpt from hearing where I was Pro se and Steve Knight gave false orchestrated testimony stating that I had tried to kill him (drowning).
   - In fact, when Steve was about 8 years old he started calling a friend of mine mean names as she was leaving our house. As she walked passed his kiddy pool, she pushed his head under the water for about 10 seconds. When I saw this from our back door, I called for her to stop. She stopped and went on her way. Steve was a little shaken but okay.
h. September 2003 – Secretly filed frivolous restraining order allegedly filed by Steve Knight. The complaint was allegedly written by someone else (clearly not Steve's handwriting) and it contains false statements making it appear that I was intending to cause Steve physical harm.
i. October 2003 – Response from state bar
j. October 2003 – Response from JQC
k. September 2004 – Letter received from FBI
l. 2006 - Bank of America Security Deed showing owners of mother's house as being Teresa Knight (new wife) and Steve Knight as a "married couple"
m. September 18, 2008 – 1st page of federal law suit
n. 2009 – Tax Summary showing only Teresa Knight as "sole owner" of property
o. 2 news articles regarding Georgia's death penalty


Respectfully Submitted on this ___28___ day in March 2011

*Carol Cole*

Carol Cole
4573 Latimer Pointe
Kennesaw, Ga. 30144

Dear Carl

I need to see you and explain in person. That was a very bad day yesterday and you did not understand. I did not mean what I said no I have tried to work it out but I cannot answer. I want it make it very clear to you as my attorney, to me more try I did will to me and me that you and me never, I got out. I need you need you. One more try I ask, see if you will come to me.

T.S.



DECEMBER 29, 1998

TO WHOM IT MAY CONCERN:

THIS IS A STATEMENT OF FACTS CONCERNING THE EVENTS
LEADING UP TO THE TERMINATION STATUS OF CAROL J. COLE.

ON DECEMBER 16, 1998 WHILE COMPILING MY MONTHLY
REPORTS CONCERNING COBRA INSURANCE AND EMPLOYEE
TERMINATIONS AND NEW HIRES I ASK MY SUPERVISOR MRS.
MARSHA HUNTER AS TO THE STATUS OF CAROL J. COLE. I WAS
TOLD AT THAT TIME THAT MS. COLE HAD TERMINATED WITH
OUR COMPANY. WHEN I ASKED WHAT DATE THIS HAPPENED I
WAS TOLD TO USE THE EFFECTIVE DATE 12/1/1998.

WHEN I FILLED OUT THE INTERNAL FORM FOR SEPARATION I
ESTIMATED HER LAST DAY OF WORK AS NOVEMBER 27, 1998.
AFTER FURTHER DISCUSSION WITH MR. GEORGE PREZIMIRSKI I
HAVE DISCOVERED THAT THE ACTUAL DATE IS NOVEMBER 23,
1998. PLEASE KEEP IN MIND THAT THE FORM USED IN THIS
INSTANCE IS NOT THE GEORGIA STATE SEPARTION NOTICE
DOL-800. THE "FRIENDLY FORMS" SEPARATION NOTICE WAS
FOR MY BENEFIT AS THE OFFICE MANAGER TO HAVE AS MUCH
INFORMATION AS POSSIBLE AND TO ALLOW MS. COLE TO LOOK
OVER ITS CONTENT AND RESPOND IF SHE FELT IT WAS
WARRANTED. PLEASE ALSO NOTE THE FORM WAS NEVER
SIGNED BY MR. PREZIMERSKI HER IMMEDIATE SUPERVISOR.

MS. COLE'S EXIT PAPERS WERE SENT TO HER CERTIFIED MAIL
ON DECEMBER 16, 1998 THEY WERE NOT SIGNED FOR UNTIL
DECEMBER 28, 1998. WHEN MS. COLE REVIEWED THE PAPERS
SHE IMMEDIATELY CALLED OUR OFFICE AND SPOKE TO MRS.
MARSHA HUNTER. I WAS OUT TO MAKE OUR DAILY BANK
DEPOSIT. ACCORDING TO MS. HUNTER, MS. COLE INSISLTED
THAT WE SEND HER ANOTHER SEPARATION NOTICE SHOWING
THAT SHE WAS TERMINATED AGAINST HER WISHES AND THAT
SHE DID NOT RESIGN. MRS. HUNTER TOLD ME THE SITUATION
AND I REFUSED TO DO SO UNTIL I DISCUSSED THE MATTER
WITH HER IMMEDIATE SUPERVISOR.

b

AFTER THIS DISCUSSION I HAD THE FOLLOWING INFORMATION.
CAROL COLE STATED IN NOVEMBER THAT SHE WAS TAKING
AND EXTENDED LEAVE OF ABCENSE AND WOULD NOT BE
BACK UNTIL JANUARY 1999.  HER LAST WORKING DAY WAS
NOVEMBER 23, 1998.  SHE CALLED MR. HARRY HOFFMAN ON
DECEMBER 16, 1998 AND STATED THAT SHE WOULD NOT BE
RETURNING TO HER JOB HERE AT JOHN BLEAKLEY RV CENTER.
THIS IS CASE IN POINT FOR THE REASON FOR SEPERATION AS
"RESIGNATION"

*Karen L Bowlin*

**KAREN BOWLIN**
**OFFICE MANAGER**
**JOHN BLEAKLEY RV CENTER**

**STATE OF GEORGIA**

| | |
|---|---|
| IN RE ESTATE OF | FILE/ESTATE |
| JACQUELYN RUTH KNIGHT, | NO: <u>02-002004</u> |
| Deceased. | |

COPY

FILED IN OFFICE
CLERK PROBATE COURT
GWINNETT COUNTY, GA.

Mar 4 10 24 AM '03

CLERK

## <u>AMENDED CAVEAT</u>

Comes now the Caveator, Carol Cole, and here by amends her caveat by adding the following claim and shows the court as follows:

**1.**

The Last Will and Testament of Jacquelyn Ruth Knight was executed on July 10, 2001.

**2.**

The witnesses to the Final Will were Randy Schetcher and Doug Daum.

**3.**

The witnesses did not observe Ms. Knight execute the agreement.

**4.**

The witnesses did not make an assessment as to whether the testatrix was competent.

**5.**

The witnesses did not observe each other witnessing the Will.

**6.**

The notary public did not observe the witnesses or the testatrix execute the Will.

C

Wherefore, the Caveator prays that this Court

1. deny the probate of the Last Will and Testament of Jacquelyn Ruth Knight

2. award attorney's fees in an amount to be proven at trial; and

3. such other and further relief as the court deems just and proper.

Respectfully submitted this 2 day of March, 2003.

HUGHES & ASSOCIATES, P.C.

Robert W. Hughes, Jr., Esq.
State Bar Number: 376311
Counsel for Carol J. Cole

2415 West Park Place Boulevard
Suite B
Stone Mountain, Georgia 30087
Telephone:   (770) 469-8887



IN THE PROBATE COURT OF GWINNETT COUNTY

FILED IN OFFICE
CLERK PROBATE COURT
GWINNETT COUNTY, GA.

MAY 1 4 13 PM '03

STATE OF GEORGIA

_____, CLERK

IN RE: Estate of                    )
JACQUELYN RUTH KNIGHT,               )        Estate No. 02-002004
                                     )
                                     )        Petition to Probate Will in Solemn Form and
                                     )        Caveat

## ORDER

A hearing being held on April 29, 2003 with Robert W. Hughes, Jr., Esq. appearing for Carol Cole; and Michael T. Smith, Esq. appearing for Steve O. Knight; the Court makes the following

### Findings of Fact

Jacquelyn Ruth Knight died on October 24, 2002 while domiciled in Gwinnett County, Georgia. On November 25, 2002, Steve O. Knight, son of the decedent, filed a Petition to Probate in Solemn Form a document purporting to be the July 10, 2001 Will of the decedent. Notice was published according to law.

On December 18, 2002 and December 20, 2002, Carol Cole and Alton C. Knight, the other children of the decedent, filed Caveats to the Petition alleging that the Petitioner is unfit to serve.[1] On March 4, 2003, Carol Cole filed an Amended Caveat asserting that the Will was not properly executed. That matter was heard April 29, 2003.

Douglas Daum, scrivener and witness to the Will, testified that the testator came to his office on a date prior to the date of execution in order to discuss the particulars of her Will. On the date of execution, the testator was seated in a conference room, and Mr. Daum, Ms. Buchett, and Randy Schetcher entered the room. Daum testified that after the testator signed; Mr. Schetcher signed; he (Mr. Daum) signed; and Ms. Buchett notarized the self-proving affidavit.

Linda Buchett, legal assistant for Douglas Daum, testified that she, Mr. Daum, and Mr.

_____

[1]A hearing on the fitness of Steve O. Knight to serve will occur on May 28, 2003.

-1-

Schetcher, arrived together in the conference room where the testator was seated. She testified that Mr. Daum made introductions around the room, and that the testator, then the two witnesses signed in each other's presence and in her presence, and she notarized the self-proving affidavit.

Randy Schetcher testified that he witnessed the will in the presence of an elderly woman and immediately left the room to finish work he was doing in Mr. Daum's office.

### Conclusions of Law

O.C.G.A. §53-4-20 states that a will must be in writing signed by the testator and attested and subscribed in the presence of the testator by two or more competent witnesses. The evidence showed that the testator signed the Will in the presence of two witnesses who also signed the Will.

Therefore, it is

ORDERED that July 10, 2001 Last Will and Testament as filed by Steve O. Knight be established as the Last Will and Testament of said decedent, and that the same be admitted to record, as proved in solemn form. The appointment of a personal representative of the estate will be decided after evidence is presented in the May 28, 2003 hearing.

SO ORDERED this _____1st_____ day of May, 2003.

Walter J. Clarke, Judge
Probate Court of Gwinnett County

*If any party desires to have this case reported, please make arrangements to have a court reporter present.*



**Bank of America.**

Account Records - Columbia, SC
Fax - 803-765-4924
Requests for Signature Verification - 1-800-756-3333 Options 4,8,2.

Faxed To:

Customer's Name: KNIGHT S O

Account Number: 1720000478088888

Provided are the authorized signatures on the requested account(s).

Sent By: VHT

→ Effective June 29, 2002, Baltimore Account Records consolidates into
Columbia. Obtain signatures on District of Columbia, Maryland, and
Virginia accounts through OneCall at options 4, 8, 2, 1. Pin access
code required.

MRS. S. G. KNIGHT
2112 WILLAMS PL.
SNELLVILLE, GA 30039

9406

GA 257 363966
8-31-04 30 10-6-02

Pay to the order of _Publix_ _$ 82.87_

_Eighty two dollars + eighty seven cents_ Dollars

Bank of America,

Memo _____ _Mrs. S. G. Knight_

⑆08 10000 5 24⑆ 00004 780888A⑆ 9498 ⑈0000008 2874⑈

---

MRS. S. G. KNIGHT
2112 WILLAMS PL.
SNELLVILLE, GA 30039

9407

Date _11-12-02_

Pay to the order of _Greg Daily_ _$ 3200.00_

_Three thousand two hundred_ Dollars

Bank of America,

Memo _job 1946 Ackworth_ _Mrs. S. G. Knight_

⑆08 10000 5 24⑆ 00004 780888A⑆ 9497 ⑈00003 20000⑈

---

MRS. S. G. KNIGHT
2112 WILLAMS PL.
SNELLVILLE, GA 30039

9408

Date _10-17-02_

Pay to the order of _Walton EMC_ _$ 199.86_

_One hundred ninety nine 86/100_ Dollars

Bank of America,

Memo _#697 07 701_ _Mrs. S. G. Knight_

⑆08 10000 5 24⑆ 00004 780888A⑆ 9498 ⑈0000019986⑈

---

MRS. S. G. KNIGHT
2112 WILLAMS PL.
SNELLVILLE, GA 30039

9500

AW

Date _10-22-02_

Pay to the order of _Greg Knight_ _$ 17200.00_

_Seventeen thousand two hundred dollars_ Dollars

Bank of America,

Memo _____ _Mrs. S. G. Knight_

e 2

JurisPro.com



## JurisPro Expert Witness Directory

Clearly conveying the abilities of expert witnesses.

EXPERT
SEARCH

Return to Search

# Mr. Farrell C. Shiver

Shiver & Nelson Document
Investigation Laboratory
1903 Lilac Ridge Drive
Woodstock, GA 30189

Phone: (770) 517-6008
Fax: (678) 494-9283

Intro  Web Page  E-mail  Background  Articles  References  C



Farrell Shiver is a Forensic Document Examiner in private practice in Woodstock, Georgia, a suburb of Atlanta. His qualifications in the field include:



Certification by the American Board of Forensic Document Examiner
Member of the American Society of Questioned Document Examiners
Member of the Questioned Documents Section of the American Academy of Forensic Sciences
Member of the Southeastern Association of Forensic Document Examiners
Former Chief Document Examiner - U.S. Army Criminal Investigatio Laboratory
Director, American Society of Questioned Document Examiners
Editor, Journal of the American Society of Questioned Document Examiners
Graduate of, and former chief instructor for the U.S. Army's two-year resident training program in Forensic Document Examination
Court qualified expert, including U.S. Federal District Court
Experienced in criminal cases and civil cases
Author of numerous papers and articles on the subject of Forensic Document Examination
Retired Special Agent of the U.S. Army Criminal Investigation Command



genuine "Mrs S. O. Knight" signature.

### 8.

Attempts to decipher the obliterated entry on Document Q4 were not successful. It is usually not possible to decipher obliterated entries from photocopied documents.

### 9.

All of the documents submitted for examination were photocopied documents. This was a limitation during this examination. I highly recommend that original documents, particularly the original questioned documents, be obtained and submitted for examination. It is possible that the obliteration on Document Q4 can be deciphered using nondestructive infrared light techniques. The same techniques may disclose additional evidence of the alterations made to the maker signature on check number 9500

### 10.

In summary, after critical examination of these documents and based upon my training and experience as an expert in the examination and comparison of handwriting, I reached the professional opinions that:

a. It is highly probable that Mrs. Jacquelyn Knight did not write the maker signature on the face of Documents Q1 and Q2 (copies of check 9500).

b. No conclusion could be reached as to whether Mr. Steven O. Knight wrote the maker signature on the face of Documents Q1 and Q2.

c. The maker signature on check number 9500, appearing on Document Q3, was altered after the check was imaged in the banking system. The alterations are consistent with an effort to make the signature appear more like a genuine "Mrs. S.O. Knight" signature.

d. The obliterated entry on Document Q4 cannot be deciphered from the photocopy.



Bank of America

9500

MRS. S. O. KNIGHT
2888 WILLIAMS PL
SNELLVILLE, GA 30078

AW

Date 10-22-02

Pay to the order of _Steve Knight_ ............................. $ 17,700 00/xx

_Seventeen thousand Seven hundred dollars_ ........... Dollars

Bank of America.

ACH RT 061000052

Advantage
mrs S. Knight

Memo _____

⑈06 10000 5 2⑈  0000 4 78088 88⑈  9500  ⑈000 1 7 70000⑈

$17,700.00

10/23/02
10:

14:41 PM
00133   110   FC103
30H147008888 ACLT/H300B888

CHECK HOLD

6-2-2000

Capture Date: 20021023 Sequence #: 0200738563

## QUESTIONED SIGNATURE



**Q1**

## KNOWN SIGNATURE OF STEVEN KNIGHT



**K13**

**This chart depicts a similar ending stroke in the questioned signature and a known signature of Steve Knight. This manner of ending the signature was not found in any of the known signature samples of Jacquelyn Knight.**

**Exhibit D**

## QUESTIONED SIGANATURE



This chart depicts alterations to the Mrs. S. O. Knight signature visible in the Q3 copy of check number 9506 (provided during discovery) that were not present when the check was imaged at the Bank of America (as depicted in Q1).

Note:  The bottom portion of the signature in Q3 was cut off in the copy that was provided.

**Exhibit E**

## 11.

My methods of examination, and the documents relied on for examination and comparison, are commonly relied upon by experts in the field of forensic document examination as bases of opinions on the authenticity of documents. I have no financial interest in the outcome of this case and my opinions in this matter are based solely upon an examination of the documents submitted.

FURTHER SAYETH AFFIANT NOT.

Farrell C. Shiver

Sworn to and subscribed before

me this ___15TH___ day of

___MAY___, 2003.

Notary Public

Notary Public, Cherokee County, Georgia
My Commission Expires August 3, 2005

1        A.        You ain't never liked me, I know that.
2   Yeah, I guess we have.
3        Q.        Any --. All three of us, did we ever argue?
4   Can you think of one fight?
5        A.        I can remember you trying to drown me in a
6   pool one time, and I -- I know you ain't never liked me,
7   Carol.  I know that for a fact.  But as far as arguing, I
8   just --
9        Q.        I never tried to drown you in a pool.
10       A.        -- just smart remarks and stuff like that.
11       Q.        I said smart remarks to you?
12       A.        No, you --
13            THE COURT:  All right, we're arguing.
14            MR. SMITH:  The answer to that question is
15       yes.
16            THE COURT:  We're going to move on.  Okay.
17   BY MS. COLE:  (Resuming)
18       Q.        I mean but we've never fought.  Have we ever
19   fought?  Have we, the three of us, ever fought, ever?
20       A.        No, I guess not.  Ain't never been around to
21   fight, I guess, except when I was little.
22       Q.        Do you have any idea why I didn't come
23   around you more than I did?
24       A.        I have no idea, Carol.
25       Q.        You don't have any idea, okay.

'7

9

6.     The Respondent has committed the following acts of Family Violence against the Petitioner or the minor children:

(Please refer to the legal definitions on the instruction sheet. A family violence petition MUST set out facts to support at least one of these offenses. If none of these offenses has occurred, you should consider another more appropriate legal remedy.)

[ ] Simple Battery    [ ] Battery    [ ] Simple Assault    [ ] Aggravated Assault    [ ] Criminal Trespass

[ ] Criminal Damage to Property    [ ] Unlawful Restraint    [✓] Stalking    [ ] Aggravated Stalking

[ ] Other Felonies

7.     The specific facts concerning the above listed acts of Family Violence are as follows (Attach additional sheets and exhibits as necessary):

Carol, my sister, has been getting more aggresive in her acts towards me. She did not speak to my mother for two years prior to her death. She appears to have transferred her anger to me since my mother passed on + left me the executor of her will. She is unhappy with the terms of the will + challenged it in court. She lost. She challenged my becoming the executor in court. She lost. She is now trying to find a new way to eleminate me as the executor. In the process of her court cases she requested alot of personal information of mine. Apparently not be satisfied, she admitted in court she has illegally accessed my credit. She called my neighbors, my relatives, my friends to find out personal info. on me. My brother told mike Smith, my estate attorney, she has accessed my credit multiple times + my annuity checking account multiple times. Yesterday she drove by my house at least 5 times, turning around in neighbors driveways + driving extremely slowly + staring at my house. I feel her anger

8.     Other documents supporting the allegations of Family Violence committed by the Respondent are attached hereto as Exhibit A, consisting of _____ pages. (Police reports, medical or hospital records, photographs, etc.) has Increased

9.     The Petitioner alleges that Family Violence has occurred in the past and is reasonably likely to occur in the future for the following reasons:

[✓]    The Respondent has made threats of future violence/stalking.   (She has said she will "do what it takes".   + am concerned it is becoming more in the

[✓]    There is an established pattern of behavior by the Respondent involving acts of family violence as set forth above.   Physical Nature

[ ]    The Respondent has a pattern of continued substance abuse which has caused family violence in the past.

[ ]    Other: _____

_____

_____

10.    The Respondent should be restrained from committing further acts of family violence.



# STATE BAR OF GEORGIA

## OFFICE OF THE GENERAL COUNSEL

WILLIAM P. SMITH III
General Counsel

October 3, 2003

CONFIDENTIAL
Ms. Carol Cole
2020 Wilton Ridge Ct.
Roswell, GA 30075

Re:   Grievance filed against Michael Todd Smith

Dear Ms. Cole:

I have carefully reviewed the grievance you filed against Michael Todd Smith, along with his response and your rebuttal. You filed a complaint against Mr. Smith based on his representation of your half-brother Steve Knight in a dispute over the estate of Jacquelyn Knight. You believe Mr. Smith has acted improperly in advising your half-brother's case, and you also believe he has "covered up" for the attorney who wrote Jacquelyn Knight's will.

In response, Mr. Smith explains that he has represented Steve Knight vigorously, but that you are simply frustrated at the fact that the probate matter has not been resolved in your favor. Additionally, you are apparently dissatisfied with the performance of your own lawyer, and you very much dislike your half-brother.

Though I believe you are greatly disappointed with the outcome of your legal claims, I do not see any evidence that Mr. Smith has acted unethically. Although you are distrustful of your half-brother, I do not see how Mr. Smith is responsible for what has occurred. Your concerns are best addressed in the court where the matter is pending at this time. Because I do not believe Mr. Smith has acted unethically, I am closing the disciplinary file in this matter.

Yours truly,



Jenny K. Mittelman
Senior Assistant General Counsel

JKM/caw
c:   Michael Todd Smith

800 Madison Street, N.W. • Suite 1800 / Atlanta, Georgia 30303
(404) 527-8720 • (800) 334-6865 • (404) 527-8744 (facsimile)



# JUDICIAL QUALIFICATIONS COMMISSION
## STATE OF GEORGIA

**April 17, 2003**

**Confidential - To Be Opened**
**By Addressee Only**

Ms. Carol Jean Cole
2020 Wilson Ridge Court
Roswell, GA. 30075

Re: <u>Complaint against Judge Walter J. Clarke, II</u>

Dear Ms. Cole:

The Judicial Qualifications Commission has carefully considered your complaint and the numerous documents in the above-stated matter. The authority of the Commission is limited to consideration of alleged judicial misconduct which involves a violation of the Code of Judicial Conduct. After careful review of your complaint and any materials you submitted, the Commission has concluded that they fail to reveal any conduct on the part of the Judge evidencing any violation of the Code for which the Commission should institute disciplinary proceedings.

For your information, the Commission is not an appellate court and does not have jurisdiction to correct errors of either fact or law committed by a judge in any proceeding, civil or criminal. Further, the Commission does not have the authority to review, reverse or modify a criminal conviction or sentence. Such rulings must be appealed to a higher court and pursued through the appellate process rather than by way of a complaint to this Commission. In short, final decisions rendered by a Judge are matters over which this Commission has absolutely no jurisdiction.

The judicial conduct or misconduct over which the Commission has jurisdiction specifically <u>does not</u> include rulings on the law and/or the facts; matters within the discretion of the trial court; and rulings involving alimony, child support, custody or visitation rights.

These examples of the limitations placed on the jurisdiction of the Commission are for illustrative purposes only and not meant to provide a detailed explanation for the disposition of your complaint.

The Commission wishes to thank you for expressing your concerns about our court system.

Please reference the above-stated Docket number in any future correspondence.

Sincerely,

Cheryl F. Custer
 Director

CFC:trm

cc: Members of the Commission

9-24-04



**U.S. Department of Justice**

**Federal Bureau of Investigation**

In Reply, Please Refer to
File No.

2635 Century Parkway N.E.
Atlanta, Georgia 30345
September 22, 2004

Ms. Carol Cole

Kennesaw, Georgia   30144

Dear Ms. Cole:

      Reference is made to your letter dated September 6, 2003, which was received at the Atlanta Office of the Federal Bureau of Investigation (FBI) on September 14, 2004, regarding your contacts with Special Agent Steve Farr of the Atlanta Office regarding alleged judicial and legal corruption in Gwinnett County.

      I assigned the attorney for the Atlanta Office of the FBI to review all of the copies and documentation you provided. She meticulously read each document and concluded that any issues regarding your mother's will and the execution of her estate are matters for the State of Georgia and are not matters within the investigative jurisdiction of the FBI.

      Furthermore, you have provided no credible information to indicate any federal criminal violation within our investigative jurisdiction other than your perception that a criminal conspiracy must exist.

      Based upon the impartial review of the FBI Atlanta Division Counsel, no additional action will be taken by our office.

               Sincerely,

               Gregory Jones
               Special Agent in Charge

K

BK 4 7 I 35 PG 0 4 2 7

Return To:  LOAN # 6443199814
FL9-700-01-01
JACKSONVILLE POST CLOSING
BANK OF AMERICA
9000 SOUTHSIDE BLVD.
BLDG 700, FILE RECEIPT DEPT.
JACKSONVILLE, FL  32256
Prepared By:
   CARLA GARRIGAN
   BANK OF AMERICA, N.A.
   9000 SOUTHSIDE BLVD. , #600
   JACKSONVILLE, FL 322560000

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA.

06 OCT 13  AM II: 38

TOM LAWLER, CLERK

0305483 - 4

--------- [Space Above This Line For Recording Data] ---------

# SECURITY DEED

LOAN # 6443199814

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated OCTOBER 11, 2006, together with all Riders to this document.

(B) "Borrower" is  TERESA S KNIGHT AND STEVE G KNIGHT, A MARRIED COUPLE

I SUL
GEORGIA INTANGIBLE TAX PAID
$ 360.00
TOM LAWLER
SUPERIOR COURT GWINNETT
COUNTY, GEORGIA

Borrower is the grantor under this Security Instrument.

(C) "Lender" is  BANK OF AMERICA, N.A.

Lender is a  NATIONAL BANKING ASSOCIATION
organized and existing under the laws of  THE UNITED STATES OF AMERICA

GEORGIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3011 1/01

-6(GA) (0009)
Page 2 of 16          Initials: TSK SK          0169982
VMP MORTGAGE FORMS - 1800521-7291          CVGA 10/10/06 12:22 PM 6443199814

48



# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF GEORGIA

## ATLANTA DIVISION

Carol Cole

      Plaintiff

vs.                        Civil Action No. 1 08 CV-2877 ODE
                                      Amended

**BANK OF AMERICA**

United States of America

      Defendants

Title 18 U.S.C. Section 1964(c)

Title 28 U.S.C. Section 1343

## **PRIMA FACIE CASE**

Legal Claims:

1) April 2003 - **BANK OF AMERICA** knowingly and corruptly forged, altered

and falsified banking documents with the intent (*Russell v. State, Fla.*

*App.,873 So.2d 97, 98*) to **cover up** for Bank Fraud for the purpose of

**misleading** Plaintiff and to **obstruct justice** in an effort to allegedly protect

the integrity of **BANK OF AMERICA** and its *stockholders* from 2003

1



Tax Summary
Parcel ID: R5037 084

*Current Owner*

KNIGHT TERESA S
607 CASCADE DR SW
LILBURN, GA 30047-6313

Owner of Record
KNIGHT TERESA S

Tax District
SNELLVILLE

Tax Roll : Real Property

SITUS
2593  WILLIAMS PL

Legal Description
LOT 9 BLK J WILLIAMS PL

Tax Bill Totals

| | |
|---|---|
| Installment | $0.00 |
| Delinquent | $0.00 |
| Amount Due | $0.00 |

Tax Year: 2009    Bill Number: 3597526    Net Tax Assessment: $1,722.65

| Period | Due Date | Tax | Penalty/Fee | Interest | Total Due |
|---|---|---|---|---|---|
| INST 1 | 10/15/2009 | $0.00 | $0.00 | $0.00 | $0.00 |
| INST 2 | 11/15/2009 | $0.00 | $0.00 | $0.00 | $0.00 |
| | | | | Total Due: | $0.00 |

| Year | Bill Number | Tax | Penalty/Fee | Interest | Total Due |
|---|---|---|---|---|---|
| | | No Delinquent Records Found | | | |

Payments

| Last Paid | Bill Number | Tax Year | Amount Paid |
|---|---|---|---|
| 11/16/2009 | 3597526 | 2009 | $861.33 |
| 10/12/2009 | 3597526 | 2009 | $861.32 |
| 11/11/2008 | 2971562 | 2008 | $701.43 |
| 09/07/2008 | 2971562 | 2008 | $701.44 |
| 11/10/2007 | 2669362 | 2007 | $692.55 |
| 09/10/2007 | 2669362 | 2007 | $692.55 |
| 10/16/2006 | 2347356 | 2006 | $818.91 |
| 10/13/2006 | 2223922 | 2005 | $818.91 |
| 10/13/2006 | 2347356 | 2006 | $444.01 |
| 03/29/2006 | 2223922 | 2005 | $625.24 |

# Georgia Assembly Okays Death Penalty Alternative, Denies Spilt Jury Measure

**By Matthew Cardinale, News Editor, The Atlanta Progressive News (April 05, 2009)**

(APN) ATLANTA – A bill, SB 13, passed the Georgia Assembly this year which will allow district attorneys to seek life without parole for individuals convicted of murder, without first having to ask for the death penalty in order to obtain such a ruling.

Advocates believe the bill will reduce the number of death penalty sentences sought in Georgia.

"Sometimes in a case where the circumstances are particularly egregious, the District Attorney wouldn't want to risk the possibility of the defendant receiving a life sentence with the possibility of parole. This will make it so they can receive life without parole without making it a death penalty case," Sara Totonchi, chairperson of Georgians for Alternatives to the Death Penalty, told Atlanta Progressive News.

State Sen. Preston Smith (R-Rome) had tried for three years to get the bill passed, with the support of District Attorneys from around the state. Co-sponsors of the bill included State Sen. Kasim Reed, an Atlanta mayoral candidate.

At the same time, the Georgia legislature fought back bills which would possibly have increased death penalty sentences, including HB 32, which would allow split, or non-unanimous, juries in Georgia to issue death penalty verdicts.

As previously covered by Atlanta Progressive News, if passed, this controversial bill would make Georgia the first state to allow non-unanimous death penalty verdicts, with as little as 9 to 3 jurors.

Proponents of this bill, including sponsor, State House Rep. Timothy Bearden (R-Villa Ricca), tried numerous legislative moves to get it passed, but ultimately failed this year.

The House Judiciary Committee Chairman, Rich Golick (R-Smyrna), chose not to take up the split jury bill on its own this Session.

"During the legislative session, with all the meetings, bills, and running around, it's easy to develop ADD," he told Creative Loafing magazine. "If there's an issue that deserves a long, probative, disciplined examination, it's the death penalty."

When HB 32 did not get heard in committee, House Republicans shifted tactics.

Their next maneuver was essentially to attach the language of HB 32 as an amendment to SB 13.

SB 13 passed the State Senate on February 03, 54-0. It passed House committee on February 11. Then on March 17, the bill was withdrawn from the House and recommitted to the Rules Committee.

Upon the bill's sudden withdrawal, Rules Committee Chairman Earl Ehrhart (R-Powder Springs) told the Atlanta Journal-Constitution newspaper, the bill needed a "technical correction."

State Sen. Smith told the AJC that he had been told the House leadership had pulled his bill in an attempt to amend it with the split jury language. Rep. Erhart told CL that Speaker Richardson had told him the same.

For the last two Sessions, the House would not allow Smith's life-without-parole bill to pass without the split jury language.

In 2007, the split jury bill had been sponsored by then-House Majority Whip, Barry Fleming (R-Harlem), who recently lost to US Rep. Paul Broun (R-GA) in a Congressional bid.

"It was definitely upsetting to him [Sen. Smith]. So his Committee didn't meet for week," Totonchi told APN. This held up other judiciary bills in the Senate.

Totonchi and district attorneys together had one-on-one conversations with legislators on the floor of the assembly. Rep. Golick also "worked to persuade the speaker to release Smith's bill intact," CL reported.

"We basically were just negotiating with the legislators to make sure the divided jury language didn't get tacked on, and it didn't at all at any point, but the threat was there throughout the week," Totonchi said.

Finally, in what advocates saw as a victory, the State House approved SB 13 without the split jury amendment, on March 25, 2009, 164-0.

While it did have to go back to the Senate for approval again, "it passed substantively in the form that it was introduced," Totonchi said.

Just when it seemed over, though, "it seems the Speaker of the House Glenn Richardson will not back down on this issue easily," Sara Totonchi wrote in a March 25 email obtained by Atlanta Progressive News.

"We have learned that he is trying to amend yet another bill to allow divided juries in capital cases to result in a death sentence. Their plan is to amend Senate Bill 151 (which increases the ways victim impact statements can be presented in court proceedings)," Totonchi wrote. No such amendment passed.

As recently reported by Atlanta Progressive News, Georgia was only one of a few states to execute individuals last year, in a year that the number of executions remained low nationwide. Last month, New Mexico joined New Jersey in a recent series of states issuing death penalty moratoriums.

The Georgia legislature's actions this year, in approving SB 13, suggest the state is slowly moving away from, or moderating its stance towards, the death penalty.

Yet, a bill by State Sen. Vincent Fort (D-Atlanta) to end the death penalty in Georgia, SB 175, did not receive consideration in committee.

Moratorium co-sponsors included State Sens. Gloria Butler, Robert Brown, Emanuel Jones, Nan Orrock, and Horacena Tate.

And Totonchi sees SB 13's passage as the exception to the rule.

"The threat to lower the bar to impose the death penalty in Georgia is very real, and we will continue to fight it year after year," Totonchi said.

State Sen. Smith "is just one member of the Georgia Assembly that managed to get his bill, but this was his third year trying," Totonchi said.

"For the previous three years, this bill has been hijacked as a bill to expand the use of the death penalty," Totonchi said.

"I would very much like to say we're moving in the right direction in Georgia but it's just not the case."

# Barnes, Deal support split-jury death sentences in Georgia

### *Both oppose halting executions while evidence is gathered.*

Posted: September 19, 2010 - 12:16am

By Walter C. Jones

ATLANTA - Both major-party nominees for governor favor allowing juries to impose a death sentence without being unanimous.

That's just one of the conservative positions that Democrat Roy Barnes and Republican Nathan Deal share on matters of crime and punishment. Both men are lawyers who began their careers as prosecutors.

Allowing a death penalty when one or two jurors disagree would be a major change for Georgia since it began using capital punishment again in 1973 after a nine-year, court-imposed hiatus. A unanimous jury was thought to be a safeguard against imposing the ultimate, irreversible sentence on someone undeserving of it.

Legislation to allow a split jury to give a death sentence has failed to pass the General Assembly since first introduced after a Fulton County jury gave Brian Nichols, the killer of a judge and other court personnel, a life sentence.

"I think we could fairly implement this rule while maintaining safeguards that protect innocent defendants," Deal said.

Another effort in recent years has been the attempt by death-penalty opponents to halt executions temporarily as Illinois did while DNA evidence and other advancements are used to review the guilt of everyone on Death Row. Deal and Barnes both oppose such a halt.

Barnes simply states, "I support capital punishment."

Whichever man becomes governor in January will face difficult budget decisions. To cope, other states have relaxed sentencing laws and granted early release to some non-violent inmates.

1

Deal and Barnes, though, aren't open to any reductions in Georgia's two-strikes law, which requires a life sentence for a second conviction of any of seven violent crimes. Instead, both look to prevention.

"The best way to protect the public and tax dollars is to focus on prevention of crime in the first place," Deal said. "Once crimes are committed and defendants are convicted, we have a constitutional obligation to protect the public from offenders who pose a continuing threat."

Barnes stressed his own record.

"When I was governor, both the crime rate and the number of actual crimes decreased," he said. "When elected, I'll restore funding to our law enforcement to fully fund work camps and crime labs."

Both said they would consider departing from legislating mandatory minimum sentences for some crimes, giving judges more leeway.

"Judges, who are elected in Georgia and answerable to the voters, need some level of discretion to avoid miscarriages of justice," Deal said.

An important piece of legislation coming before the General Assembly next year is a total revision of the laws dealing with juveniles. A coalition of child-advocate organizations is proposing the end to cases in which a juvenile is tried as an adult and extending by another year the ages for juvenile court.

If passed, the more-liberal handling of juveniles could be vetoed by the new governor because both men said they oppose it.

"When juveniles commit crimes of an adult nature, they should be tried as adults," Barnes said.

Barnes and Deal will also be on the ballot with Libertarian nominee John Monds in November.